1    Courtland L. Reichman (SBN 268873)
     McKool Smith Hennigan, P.C.
2    255 Shoreline Drive Suite 510
     Redwood Shores, CA 94065
3    Tel: (650) 394-1400
     Fax: (650) 394-1422
4    creichman@mckoolsmith.com

5    McKool Smith, P.C.
     Robert A. Cote (pro hac vice)
6    rcote@mckoolsmith.com
     Kevin Schubert (pro hac vice pending)
7    kschubert@mckoolsmith.com
     One Bryant Park, 47th Floor
8    New York, NY 10036
     Tel: (212) 402-9400
9    Fax: (212) 402-9444

10   McKool Smith, P.C.
     Dirk D. Thomas (pro hac vice pending)
11   dthomas@mckoolsmith.com
     1999 K Street, NW
12   Washington, DC 20006
     Tel: (202) 370-8202
13   Fax: (202) 370-8344

14   *Attorneys for Defendant Wi-LAN Inc.*

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17

18   APPLE INC.,                          )   Case No. 4:14-CV-02838-CW
                                          )
19                          Plaintiff,    )   **DEFENDANT WI-LAN INC.'S**
                                          )   **MOTION TO SEVER, TRANSFER,**
20              vs.                       )   **AND DISMISS**
                                          )
21   WI-LAN INC, OPEN NETWORK             )   Date:       September 4, 2014
     SOLUTIONS, INC.,                     )   Time:       2:00 pm
22                                        )   Courtroom:  2, 4th Floor
                                          )   Judge:      Hon. Claudia Wilken
23                          Defendants.   )
                                          )
24                                        )
                                          )
25                                        )
                                          )
26   ─────────────────────────────────   )

27

28

McKool Smith Hennigan, P.C.
Redwood Shores, California

**TO PLAINTIFF APPLE INC. AND ITS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, September 4, 2014, at 2:00 pm or as soon as it may be heard Defendant Wi-LAN Inc. ("Wi-LAN") respectfully will move, and hereby does move, (1) to sever the claims Plaintiff Apple Inc. ("Apple") has asserted against Wi-LAN from the claims Apple has asserted against Open Network Solutions, Inc. ("ONS"); (2) to transfer to the U.S. District Court for the Southern District of California, pursuant to the first-to-file doctrine, and/or in the interest of efficiency and judicial economy, and/or 28 U.S.C. §1404; and (3) to dismiss Count XV of the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Wi-LAN's motion is supported by the attached Memorandum of Points and Authorities; the accompanying declarations of Kevin Schubert ("Schubert Decl.") and William R. Middleton ("Middleton Decl."); the record in this matter; and any argument that the Court may accept at the hearing. Defendant Wi-LAN seeks an order granting severance; transfer; and dismissal as to Count XV.

Wi-LAN submits that the issues to be decided are as follows:

1. Whether Apple has properly commenced a joint Declaratory Judgment against both Wi-LAN and ONS given that (i) ONS has no legal rights to U.S. Patent Nos. 8,457,145; 8,462,723; 8,537,757; 8,615,020; and 8,462,761 (the "Wi-LAN Patents"); (ii) Wi-LAN has no legal rights to U.S. Patent Nos. 6,745,259 and 6,907,476; (iii) Apple's claims with respect to the Wi-LAN Patents should be transferred to the U.S. District Court for the Southern District of California pursuant to the first-to-file doctrine, and/or in the interest of efficiency and judicial economy, and/or 28 U.S.C. §1404; and (iv) the ONS Patents and the Wi-LAN Patents cover completely distinct subject matter.

2. Whether Apple's claims seeking declaratory relief with respect to the Wi-LAN Patents should be transferred to the U.S. District Court for the Southern District of California pursuant to the first-to-file doctrine, and/or in the interest of efficiency and judicial economy, and/or 28 U.S.C. §1404.

3. Whether Count XV of the First Amended Complaint should be dismissed pursuant to

McKool Smith Hennigan, P.C.
Redwood Shores, California

i

1          Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

2

3    Dated:  July 28, 2014                          Respectfully submitted,

4

5                                                   By:
                                                        /s/ *Robert Cote*
6                                                       Robert Cote

7                                                   Courtland L. Reichman (SBN 268873)
                                                    McKool Smith Hennigan, P.C.
8                                                   255 Shoreline Drive Suite 510
                                                    Redwood Shores, CA 94065
9                                                   Tel: (650) 394-1400
                                                    Fax: (650) 394-1422
10                                                  creichman@mckoolsmith.com

11                                                  McKool Smith, P.C.
                                                    Robert A. Cote (*pro hac vice*)
12                                                  rcote@mckoolsmith.com
                                                    Kevin Schubert (*pro hac vice* pending)
13                                                  kschubert@mckoolsmith.com
                                                    One Bryant Park, 47th Floor
14                                                  New York, NY 10036
                                                    Tel: (212) 402-9400
15                                                  Fax: (212) 402-9444

16                                                  McKool Smith, P.C.
                                                    Dirk D. Thomas (*pro hac vice* pending)
17                                                  dthomas@mckoolsmith.com
                                                    1999 K Street, NW
18                                                  Washington, DC 20006
                                                    Tel: (202) 370-8202
19                                                  Fax: (202) 370-8344

20                                                  *Attorneys for Defendant Wi-LAN Inc.*

21

22

23

24

25

26

27

28

McKool Smith Hennigan, P.C.
Redwood Shores, California

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .............................................................................- 1 -

II.     RELEVANT FACTS ..........................................................................................- 5 -

        A.      Wi-LAN ...............................................................................................- 5 -

        B.      The S.D. Cal. Action...........................................................................- 6 -

        C.      Apple's Declaratory Judgment Action................................................- 8 -

III.    ARGUMENT .....................................................................................................- 10 -

        A.      A Severance Order Is Warranted. ......................................................- 10 -

        B.      A Transfer Order Is Warranted. .........................................................- 12 -

                1.      The First-to-File Rule Compels Transfer................................- 12 -

                2.      The Principles of Judicial Efficiency and Economy Compel
                        Transfer...................................................................................- 13 -

                3.      Transfer Is Warranted Pursuant to 28 U.S.C. §1404. .........- 15 -

        C.      Count XV Should Be Dismissed.........................................................- 17 -

IV.     CONCLUSION ..................................................................................................- 18 -

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Page(s)**

4 **Cases**

5 *Adobe Sys. v. Colo. Internet Servs., LLC*,
6    2014 U.S. Dist. LEXIS 32888 (N.D. Cal. Mar. 12, 2014)....................................2, 11

7 *Arteris S.A.S. v. Sonics, Inc.*,
   2013 U.S. Dist. LEXIS 85370 (N.D. Cal. June 17, 2013) ....................................11

8 *Bitter v. Windsor Sec., LLC*,
9    2014 U.S. Dist. LEXIS 52056 (N.D. Cal. Apr. 11, 2014) ....................................14

10 *EMC Corp. v. Bright Response, LLC*,
   2012 U.S. Dist. LEXIS 132513 (N.D. Cal. Sept. 17, 2012) ...............................3, 12
11
*Epic Adver., Inc. v. Asis Internet Servs.*,
12    2011 U.S. Dist. LEXIS 143281 (N.D. Cal. Dec. 13, 2011) ..................................10

13 *Hill v. Robert's Am. Gourmet Food, LLC*,
14    2013 U.S. Dist. LEXIS 96435 (N.D. Cal. July 10, 2013)....................................12

15 *Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*,
   2011 U.S. Dist. LEXIS 39636 (N.D. Cal. Apr. 5, 2011) ....................................13
16
*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
17    544 F. Supp. 2d 949 (N.D. Cal. 2008) ...............................................12

18 *Microchip Tech., Inc. v. United Module Corp.*,
19    2011 U.S. Dist. LEXIS 73276 (N.D. Cal. July 7, 2011)......................................12

20 *In re Microsoft Corp.*,
   No. 2014-123, slip op. (Fed. Cir. May 5, 2014) ..................................17

21 *MTS Sys. Corp. v. Hy-Sitron, Inc.*,
22    2006 U.S. Dist. LEXIS 66338 (N.D. Cal. Sept. 1, 2006) ...................................14

23 *Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ...............................................10
24
*Reid-Ashman Mfg., Inc. v. Swanson Semi. Serv.*,
25    2007 U.S. Dist. LEXIS 37665 (N.D. Cal. May 10, 2007)..................................4, 17

26 *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
   620 F.3d 1305 (Fed. Cir. 2010).........................................................11

27

28 iv

McKool Smith Hennigan, P.C.
Redwood Shores, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA

*Top Victory Electronics v. Hitachi Ltd.*,
 2010 U.S. Dist. LEXIS 125003 (N.D. Cal. Nov. 15, 2010)............................................1, 10, 11

*TransPerfect Global, Inc. v. MotionPoint Corp.*,
 2010 U.S. Dist. LEXIS 99947 (N.D. Cal. Sept. 13, 2010) ......................................................15

*Trazo v. Nestlé USA, Inc.*,
 2013 U.S. Dist. LEXIS 171211 (N.D. Cal. Dec. 4, 2013)........................................................11

*In re Vistaprint Ltd.*,
 628 F.3d 1342 (Fed. Cir. 2010)...............................................................................................14

*Xilinx, Inc. v. Intention Investment Fund I LP*,
 2011 U.S. Dist. LEXIS 81986 (N.D. Cal. July 27, 2011)........................................................10

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*,
 218 F.R.D. 663 (N.D. Cal. 2003)............................................................................................12

**Statutes**

28 U.S.C. §1404............................................................................................................3, 12, 14

35 U.S.C. § 271...........................................................................................................4, 17, 18

**Other Authorities**

Fed. R. Civ. P. 21 ...............................................................................................................2, 11

v

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    PRELIMINARY STATEMENT

3
On June 19, 2014, in an effort to gain leverage in ongoing settlement negotiations with Wi-

4
LAN Inc. ("Wi-LAN"), Apple Inc. ("Apple") commenced a declaratory action in this Court.

5
Apple's Amended Complaint seeks declarations of non-infringement, invalidity, and

6
unenforceability concerning seven patents.  Five of these patents (referred to herein as the "Wi-LAN

7
Patents") are owned by Wi-LAN.[1]  Middleton Decl. ¶ 2.  The remaining two patents (referred to

8
herein as the "ONS Patents") are owned by Open Network Solutions, Inc. ("ONS").  *Id*.  Wi-LAN

9
respectfully moves for an order (1) severing Apple's claims against Wi-LAN from Apple's claims

10
against ONS; (2) transferring Apple's claims against Wi-LAN to the U.S. District Court for the

11
Southern District of California; and (3) dismissing Count XV of the First Amended Complaint

12
pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[2]

13
***A Severance Order Is Warranted.***  The Court should sever Apple's claims against Wi-LAN

14
from Apple's claims against ONS.  As an initial matter, Apple does not have standing to seek relief

15
from Wi-LAN with respect to the ONS Patents, and vice versa.  Although ONS is a Wi-LAN

16
subsidiary, only ONS, and not Wi-LAN, has the legal rights to enforce and license the ONS Patents.

17
Middleton Decl. ¶ 2.  Similarly, only Wi-LAN, and not ONS, has the legal rights to enforce and

18
license the Wi-LAN Patents.  *Id*.  For that reason, notwithstanding the corporate relationship

19
between ONS and Wi-LAN, Apple lacks standing to seek relief from Wi-LAN with respect to the

20
ONS Patents, and Apple similarly lacks standing to seek relief from ONS with respect to the Wi-

21
LAN Patents.  *See Top Victory Electronics v. Hitachi Ltd.*, 2010 U.S. Dist. LEXIS 125003, at *7,

22
"11 (N.D. Cal. Nov. 15, 2010) ("In order for a plaintiff to have standing in a declaratory action

23
involving allegations of patent infringement, the defendant must have a legal right in the patent at

24
---

[1] The Wi-LAN Patents are U.S. Patent Nos. 8,457,145; 8,462,723; 8,537,757; 8,615,020; and

25
8,462,761.

26
[2] Wi-LAN understands that ONS will be filing its own motion to sever Apple's claims with respect
to the ONS Patents and transfer those claims to the District of Delaware for consolidation with

27
pending litigation.

28

McKool Smith Hennigan, P.C.
Redwood Shores, California

- 1 -

1  issue that would allow the defendant to bring suit for infringement. . . .  That a corporate parent's

2  subsidiary owns a patent *is not enough to establish that the parent has rights in the subsidiary's*

3  *patents*.") (citing *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317-

4  18 (Fed. Cir. 2010)).  Severance is thus appropriate.  *See Adobe Sys. v. Colo. Internet Servs., LLC*,

5  2014 U.S. Dist. LEXIS 32888, at *11-12 (N.D. Cal. Mar. 12, 2014).

6         Severance should also be ordered under Fed. R. Civ. P. 21 because, as explained herein, Wi-

7  LAN's claims for infringement and Apple's declaratory claims with respect to the Wi-LAN Patents

8  belong in the Southern District of California.  Furthermore, the ONS Patents and the Wi-LAN

9  Patents cover completely distinct subject matter, and thus no efficiencies are to be realized by

10 lumping Apple's claims with respect to the two sets of patents in one lawsuit.

11        ***A Transfer or Order Is Warranted.***  Apple's declaratory claims with respect to the Wi-LAN

12 Patents should be transferred to the U.S. District Court for the Southern District of California.

13        As an initial matter, transfer is warranted pursuant to the first-to-file rule and in the interest

14 of efficiency and judicial economy.  Through a common parent patent application, four of the five

15 patents at issue here are intimately related to another Wi-LAN patent that is presently being litigated

16 by Apple and Wi-LAN in the U.S. District Court for the Southern District of California (the "S.D.

17 Cal. Action").  Thus, four of the patents at issue in this action and a patent already at issue in the

18 S.D. Cal. Action share (1) the same or substantially the same patent specification; (2) the same or

19 substantially the same drawings; and (3) substantially overlapping patent claims.  Schubert Decl. Ex.

20 1.  Indeed, Apple acknowledges this relationship in the Amended Complaint:  "Most of the Wi-LAN

21 Patents-In-Suit are included in the same patent family as one of the patents at issue in the [S.D. Cal.

22 Action.]"  Am. Compl. ¶ 15.  For that reason, the S.D. Cal. Action, which has been pending for more

23 than 12 months, involves closely related patent infringement questions concerning various Apple

24 products compliant with the "4G" wireless standard known as Long Term Evolution ("LTE"), and

25 the judge presiding over the S.D. Cal. Action (the Honorable Dana Sabraw) has already invested

26 significant resources in the parties' dispute.  Among other things, Judge Sabraw has held numerous

27 hearings, has issued a *Markman* ruling, has ruled on motions to clarify *Markman* issues, and, in just

28

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

a few months, will preside over a jury trial.  Schubert Decl. Ex. 1.  As such, the first-to-file rule and

the principles of efficiency and judicial economy support transfer to the Southern District of

California.  *EMC Corp. v. Bright Response*, *LLC*, 2012 U.S. Dist. LEXIS 132513, at *3 (N.D. Cal.

Sept. 17, 2012) ("When two actions involving nearly identical parties and closely related patent

infringement questions are filed in separate districts, which happens with some frequency in

contemporary litigation, the general rule is that the case first filed takes priority, and the

subsequently filed suit should be dismissed or transferred or stayed.") (quoting 14D Charles Alan

Wright, Arthur Miller & Mary Kay Kane, Fed. Prac. & Proc. § 3823 (3d ed. 2011)).

And even if the first-to-file rule and the principles of efficiency and judicial economy were

not dispositive here, transfer under 28 U.S.C. §1404 would still be appropriate.  Even putting aside

the fact that several inventors of the Wi-LAN Patents reside in the San Diego area, by Apple's own

admission, "the center of gravity" of this dispute is in San Diego, where "the majority of the

evidence" relevant to Apple's alleged non-infringement of the Wi-LAN Patents is located.  Schubert

Decl. Ex. 2 at 9, 1.  In fact, in the first-filed and related S. D. Cal. Action, Apple actually sought

transfer to the Southern District of California from the forum where that litigation was filed, by

representing that it "will have to rely on [San Diego-based] chip supplier Qualcomm to provide

support for establishing its non-infringement defense" because "[a]s a downstream customer of . . .

LTE chips . . ., Apple's knowledge of the design, manufacture, and operation of [accused] devices is

significantly limited."  Schubert Decl. Ex. 2 at 2.  Apple further argued that the Southern District of

California Court was "*the only forum able to compel [critical] technical witnesses from Qualcomm

for trial*."  *Id*. at 9 (emphasis added).  Given Apple's unambiguous representations that the Southern

District of California court is uniquely situated to resolve the parties' dispute and the significant

resources Judge Sabraw has already made and will continue to make in the related S.D. Cal. Action,

Wi-LAN respectfully submits that transfer under 28 U.S.C. §1404 is appropriate.

**Count XV Should Be Dismissed.**  Count XV of the Amended Complaint, which improperly

seeks a declaration of unenforceability based on Wi-LAN's purported "pattern and practice of

improper activity to acquire, license, and assert its patents in bad faith" (Am. Compl. ¶ 84), is based

McKool Smith Hennigan, P.C.
Redwood shores, California

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

McKool Smith Hennigan, P.C.
Redwood Shores, California

1   solely on self-serving lawyer argument and lacks any legal foundation.  The Patent Act creates a

2   strong presumptive bar against claims predicated upon allegations of wrongful or forceful

3   enforcement.  *See* 35 U.S.C. § 271(d)(3)("[n]o patent owner otherwise  entitled to relief for

4   infringement or contributory infringement of a patent shall be denied relief or deemed guilty of

5   misuse or illegal extension of the patent right by reason of his having . . . sought to enforce his patent

6   rights against infringement or contributory infringement").  To overcome this presumptive bar, an

7   accused infringer must adequately plead that the patentee's patent infringement claims were filed in

8   bad faith *and* with an improper purpose.  *See Reid-Ashman Mfg., Inc. v. Swanson Semi. Serv.*, 2007

9   U.S. Dist. LEXIS 37665, at *23 (N.D. Cal. May 10, 2007) (citing *Glaverbel Societe Anonyme v.*

10  *Northlake Mktg. & Supply*, 45 F.3d 1550, 1558 (Fed. Cir. 1995)).  The Amended Complaint's

11  boilerplate fails to satisfy the required pleading standards.  Apple—a company that is well known

12  for its own patent enforcement efforts[3]—nowhere alleges that Wi-LAN does not have a good faith

13  basis for asserting that Apple is infringing the Wi-LAN Patents.  Nor is Apple alleging that Wi-LAN

14  asserted its rights under the Wi-LAN Patents with any type of improper purpose.   Apple's

15  allegations that Wi-LAN and Apple have previously faced each other in court and that, in two

16  unrelated cases, Apple obtained declarations of non-infringement and invalidity (*see* Am. Compl. ¶

17  85) are unavailing.  As the Amended Complaint makes clear, those cases involved Wi-LAN patents

18  that are not at issue here, and Wi-LAN is aware of no authorities that would permit a court to hold

19  unenforceable a particular set of patents based on unsuccessful enforcement efforts that concerned

20  an entirely different set of patents.  Furthermore, none of the courts in which Apple and Wi-LAN

21  previously litigated their disputes have found any of Wi-LAN's patents invalid or enforcement

22  efforts to have been brought in bad faith or motivated by an improper purpose.  As such, Apple's

23  wrongful enforcement theory is squarely foreclosed by 35 U.S.C. § 271(d)(3).

24

25

26  [3] *See*, *e.g.*, Schubert Decl. Ex. 3 (noting that, as of 2012, Apple and Samsung were engaged in *more*

27  *than 50* litigations around the world).

28

## II.     RELEVANT FACTS

The Amended Complaint's recitation of relevant facts is materially incomplete and thus misleading.  We provide below an overview of the pertinent facts.

### A.     Wi-LAN

Wi-LAN is a Canadian corporation with its principal place of business at 303 Terry Fox Drive, Ottawa, ON Canada.  Schubert Decl. Ex. 4 ¶ 1.  Wi-LAN's wholly-owned subsidiary, Cygnus Broadband, Inc. ("Cygnus Broadband") has its principal place of business at 15090 Avenue of Science, San Diego, California.  *Id.* ¶ 2.  Cygnus Broadband is a developer of advanced 4G technologies and products that enhance the capacity, quality of user experience, and connectivity of 4G mobile devices and networks.  *Id.* ¶ 3.

The Wi-LAN Patents at issue in this action were developed by a team led by Cygnus Broadband's Chief Executive Officer, Kenneth Stanwood.  *Id.* ¶ 4.  Over many years, Mr. Stanwood has played a leadership role in the development of 4G technologies and standards, starting with the industry's first major 4G cellular initiative, referred to as WiMAX.  *Id.* ¶ 5.  Between 2003 and 2006, Mr. Stanwood served as Vice Chair of the IEEE 802.16 standards committee for WiMAX.  *Id.* Mr. Stanwood was a principal drafter of the original IEEE 802.16 standard for 4G cellular networks and mobile devices.  *Id.*  Mr. Stanwood has written extensively on 4G technologies, including co-authoring a popular textbook on the subject, and has been awarded over 80 U.S. patents, with more than 100 patent applications pending before the Patent Office and worldwide, many of which relate to 4G technologies.  *Id.*

After being deployed in network stacks utilizing the 4G WiMAX cellular standard, the advanced 4G technologies developed by Mr. Stanwood and his team were adopted for use in network stacks utilizing the 4G LTE cellular standard used in today's 4G mobile devices.  *Id.* ¶ 18. These technologies—which are disclosed and claimed in the Wi-LAN Patents at issue in this action—include:

McKool Smith Hennigan, P.C.
Redwood Shores, California

1        (i)     the bandwidth-on-demand and periodic bandwidth services built into 4G mobile

2   devices to enable apps installed on such devices to have exactly the bandwidth they need,

3   when they need it, in real time;

4        (ii)    the multi-tasking and app management technologies in 4G mobile devices that enable

5   such devices to run multiple apps simultaneously, including foreground and background

6   apps, without degrading the user experience; and

7        (iii)   the adaptive modulation capabilities in 4G mobile devices that allow such devices to

8   operate in all kinds of variable wireless conditions due to interference, noise, and user

9   mobility.

10   *Id.*

11        The inventions disclosed and claimed in the Wi-LAN Patents enable 4G mobile devices to

12   support a variety of services popular among users of such devices, *e.g.*, voice, conversational video,

13   live streaming of music and video, real-time gaming, video and photo sharing, email and instant

14   messaging. *Id.* ¶ 19.

15        **B.**     **The S.D. Cal. Action.**

16        Wi-LAN's wireless technologies, including the advanced 4G technologies covered by the

17   Wi-LAN Patents at issue in this case, have been licensed by nearly all companies in the wireless

18   industry except Apple.  Schubert Decl. Ex. 4 ¶ 23.  Among Wi-LAN's 130+ licensees are all of

19   Apple's major competitors in the mobile device industry, including Samsung, HTC, LG, Nokia, and

20   Motorola. *Id.*

21        Wi-LAN has made numerous efforts to enter into a license agreement with Apple, but Apple

22   has consistently refused to take a license, instead choosing to use Wi-LAN's 4G technologies

23   unlawfully. *Id.* ¶ 26.  In early meetings between Wi-LAN and Apple, years before Apple introduced

24   its current lineup of 4G LTE mobile devices, Wi-LAN presented Apple with a detailed blueprint of

25   Wi-LAN's wireless technologies and explained how these technologies would unlock the future of

26   mobile connectivity. *Id.* ¶ 32.  Apple, however, dismissed Wi-LAN's vision of the future as beyond

27   the realm of possibility. *Id.* ¶ 33.

28                          - 6 -

After seeing its efforts to engage with Apple rebuffed for years, Wi-LAN was left no choice but to seek to enforce its patents through litigation.  One such litigation (hereinafter referred to as the "Florida Action"), asserting a number of patents that name Mr. Stanwood as an inventor, was filed in December 2012 in the U.S. District Court for the Southern District of Florida.  Schubert Decl. Ex. 1. After being served with the complaint, Apple promptly filed a motion to transfer the Florida Action to the Southern District of California.  *Id.*  In its motion to transfer, Apple made a number of representations to the Florida court.  In particular, Apple argued that:

- Transfer to the Southern District of California was warranted because "Wi-LAN's claims [were] directed to technology developed by third party Qualcomm Incorporated ('Qualcomm'), who is located in SD Cal";

- "Apple purchases technology from Qualcomm that implements the LTE industry communication standard at issue, so ***Qualcomm will be the source for the majority of the evidence in this case***";

- "Wi-LAN's infringement allegations focus on technology of third party supplier Qualcomm, an SD Cal resident and Apple's sole supplier of the LTE technology at issue in this case";

- "As a downstream customer of the LTE chips at issue, ***Apple's knowledge of the design, manufacture, and operation of these devices is significantly limited***. Thus, ***Apple will have to rely on chip supplier Qualcomm to provide support for establishing its non-infringement defense***.  Because Qualcomm resides in SD Cal, the transferee forum can compel Qualcomm witnesses to appear at trial."

- "[A]s the supplier of the accused technology, ***Qualcomm's witnesses, which are located in SD Cal, are likely to have some of the most material testimony in this case***."

- "[***T***]he center of gravity of the accused activity is located in SD Cal, where the research, design, marketing, and sales decisions related to the accused products and technology occurred."

McKool Smith Hennigan, P.C.
Redwood Shores, California

- 7 -

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

- • "SD Cal is *the only forum able to compel technical witnesses from Qualcomm for trial*, [and]  this . . . favors strongly in favor of transfer."

- • Numerous inventors of the "patents-in-suit reside or recently resided in SD Cal, and the patent prosecution attorney for the patents-in-suit also works and resides in SD Cal."

Schubert Decl. Ex. 2 at 1-2, 8, 9 (emphasis added).

Apple prevailed on its motion to transfer, and the action filed by Wi-LAN in Florida was transferred to the Southern District of California and assigned to Judge Sabraw.  The S.D. Cal. Action, which includes patents that name Mr. Stanwood as a lead inventor and concerns various Apple 4G LTE devices, is scheduled for a trial in November 2014—four months from now. Schubert Decl. Ex. 1.

## C.     Apple's Declaratory Judgment Action.

In an effort to resolve the parties' disputes, on June 16, 2014, Wi-LAN requested a meeting with Apple.  Schubert Decl. Ex. 4 ¶ 120.  In its correspondence, Wi-LAN provided significant details concerning the relevance of the five Wi-LAN Patents to Apple's 4G LTE mobile devices, and explained how the fundamental inventions that are claimed in Mr. Stanwood's patents enable advanced features of Apple's 4G LTE mobile products.  *Id.*

On June 19, 2014, instead of arranging a meeting with Wi-LAN, Apple filed suit in this Court seeking declarations of non-infringement, invalidity, and unenforceability.  Dkt. 1.  Despite acknowledging in the Amended Complaint that this case relates to the S.D. Cal. Action (*see* Am. Compl. ¶ 15), the civil cover sheet that accompanied Apple's filing misleadingly failed to identify the S.D. Cal. Action as a related case.  Dkt. 1.

On June 23, 2014, two business days after Apple commenced this action and before Apple served its complaint, Wi-LAN responded by filing a new mirror-image patent infringement action against Apple in the Southern District of California Court.  Schubert Decl. Ex. 4.  Wi-LAN then promptly requested that this action be assigned to Judge Sabraw.  Schubert Decl. Ex. 1.  Wi-LAN explained that the new action was

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA

- 8 -

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

McKool Smith Hennigan, P.C.
Redwood Shores, California

related to an earlier-filed patent infringement action pending before Judge Sabraw . . . [such that a]ssigning both the instant action, Apple II, and the earlier filed Southern District of California case, Apple I, to a single judge (Judge Sabraw) will effect a saving of substantial judicial effort since both cases involve the same parties (WiLAN and Apple), the same accused products (4G LTE mobile devices), related patents and technology, and many common inventors including Ken Stanwood who is a named inventor on all patents, and common fact and legal issues relating to patent infringement and validity.

Schubert Decl. Ex. 1.

Wi-LAN further explained that

Four of the five patents in the instant case, Apple II, are related to the patents-in-suit in the earlier filed Southern District of California case, Apple I, through a common parent patent application with one of the patents-in-suit (as either continuations or continuations-in-part depending on the patent), and thus they share the same or substantially the same patent specification, the same or substantially the same drawings, and substantially overlapping patent claims.  It will save judicial effort to assign the instant Apple II case to Judge Sabraw, who has already spent a significant amount of time and effort over the past year evaluating WiLAN's 4G technology and patents in Apple I, and who is familiar with the parties and the claim construction issues pertaining to the related patents in both cases, *i.e.* Apple I and Apple II, because of their relationship.  Judge Sabraw issued a *Markman* Order in the earlier filed case construing a number of overlapping claim terms (D.I. 98) between the patents in both cases, a subsequent order granting WiLAN's motion for clarification and reconsideration related to the constructions of certain overlapping claim terms (D.I. 123), and a second subsequent order denying Apple's request for reconsideration of the subsequent order (D.I. 134).  Expert discovery is ongoing in Apple I, and the case is scheduled to be trial ready in November of this year.

Schubert Decl. Ex. 1.

The Clerk of the Southern District of California court granted Wi-LAN's request that its June 23 complaint be assigned to Judge Sabraw.  Schubert Decl. Ex. 5.  In doing so, the Clerk made two important findings concerning the new Wi-LAN Complaint and the S.D. Cal. Action.  Specifically, he found that the two actions: (1) "***involve the same patent . . . or different patents . . . covering substantially identical things***"; and (2) having two separate judges hear the two actions "***would entail unnecessary duplication of labor.***"  *Id.*  Apple has not contested these findings.

III.   **ARGUMENT**

As explained below, Wi-LAN respectfully requests that the Court enter an order:   (1) severing Apple's claims against Wi-LAN from Apple's claims against ONS; (2) transferring Apple's claims against Wi-LAN to the Southern District of California; and (3) dismissing Count XV of the Amended Complaint.

A.   **A Severance Order Is Warranted.**

Severance should be ordered for two distinct reasons.

*First*, Apple's attempts to join in one lawsuit its declaratory claims concerning the Wi-LAN Patents and its declaratory claims concerning the ONS Patents have no basis in the law.   It is elementary that a plaintiff "cannot bring a complaint seeking declaratory judgment regarding . . . patents not owned by [the] defendant[]." *Xilinx, Inc. v. Intention Investment Fund I LP*, 2011 U.S. Dist. LEXIS 81986, at *9 (N.D. Cal. July 27, 2011).   Indeed,"[i]n order for a plaintiff to have standing in a declaratory action involving allegations of patent infringement, the defendant must have a legal right in the patent at issue that would allow the defendant to bring suit for infringement." *Top Victory Elecs.*, 2010 U.S. Dist. LEXIS 125003, at *7.   Here, Wi-LAN has no direct legal rights to the ONS Patents, and ONS has no legal rights whatsoever to the Wi-LAN Patents.   Middleton Decl. ¶ 2.   Although ONS is a subsidiary of Wi-LAN, ONS has the sole rights associated with granting licenses to the ONS Patents.   On the other hand, as a subsidiary of Wi-LAN, ONS has absolutely no rights with respect to the Wi-LAN Patents, as those rights rest with Wi-LAN. *Id.*   As such, Apple cannot obtain relief from Wi-LAN with respect to the ONS Patents, and vice-versa.

The fact that ONS is a Wi-LAN subsidiary does not change that conclusion.   The law is clear that "a parent corporation and its subsidiary are legal distinct entities." *Epic Adver., Inc. v. Asis Internet Servs.*, 2011 U.S. Dist. LEXIS 143281, at *5 (N.D. Cal. Dec. 13, 2011); *see also Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) ("It is the general rule that a parent corporation and its subsidiary will be treated as separate legal entities").   As such, a parent-subsidiary relationship does not give the parent any rights to enforce its subsidiary's patents,

McKool Smith Hennigan, P.C.
Redwood Shores, California

- 10 -

and, conversely, it gives accused infringers no rights to seek declaratory relief against the parent with respect to the subsidiary's patents.  As the *Top Victory* court observed:  "That a corporate parent's subsidiary owns a patent is not enough to establish that the parent has rights in the subsidiary's patents."  2010 U.S. Dist. LEXIS 125003, at *11; *see also Spine Solutions*, 620 F.3d at 1317-18 (holding that where nothing in the record indicated that the parent was an exclusive licensee of the patent, the court could not exercise jurisdiction over the parent).

Because Apple cannot obtain relief from Wi-LAN with respect to the ONS Patents, and vice versa, Apple's claims against Wi-LAN and Apple's claims against ONS are misjoined, and severance is appropriate.  *See Adobe Sys., LLC*, 2014 U.S. Dist. LEXIS 32888, at *11-12 (noting that severance is the appropriate remedy for misjoinder).

*Second*, severance is also appropriate under Rule 21, which gives the Court "broad discretion" to determine how to best resolve claims pending before it.  *See Trazo v. Nestlé USA, Inc.*, 2013 U.S. Dist. LEXIS 171211, at *11 (N.D. Cal. Dec. 4, 2013).  As explained *infra*, this dispute belongs in the Southern District of California, a court that is already presiding over a related dispute between the parties.  Furthermore, there is no overlap whatsoever between the ONS Patents and the Wi-LAN Patents.  They cover different inventions made by different inventors, and no efficiencies are to be realized by lumping in one lawsuit Apple's claims with respect to these distinct sets of patents.  Thus, even if Apple had standing to pursue its claims against Wi-LAN and ONS in one lawsuit, which Apple does not, it would still make no sense to have those claims addressed in one setting.  Severance is thus appropriate pursuant to Rule 21.  *See Arteris S.A.S. v. Sonics, Inc.*, 2013 U.S. Dist. LEXIS 85370, at *21 (N.D. Cal. June 17, 2013) (ordering severance of declaratory claims with respect to two distinct sets of patents because "[s]everance . . . will serve the ends of justice and further the prompt and efficient resolution of those claims as well as facilitate the orderly and efficient disposition of this litigation").

McKool Smith Hennigan, P.C.
Redwood shores, California

- 11 -

McKool Smith Hennigan, P.C.
Redwood Shores, California

1

**B.       A Transfer Order Is Warranted.**

2       The first-to-file rule, the principles of judicial efficiency and economy, and 28 U.S.C. §1404

3  all compel an order transferring this case to the Southern District of California.[4]

4               **1.       The First-to-File Rule Compels Transfer.**

5       "The 'first to file' rule allows a district court to transfer, stay or dismiss an action when a

6  similar complaint has been filed in another federal court." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*,

7  218 F.R.D. 663, 665 (N.D. Cal. 2003). "When two actions involving nearly identical parties and

8  closely related patent infringement questions are filed in separate districts, which happens with some

9  frequency in contemporary litigation, the general rule is that the case first filed takes priority, and the

10  subsequently filed suit should be dismissed or transferred or stayed." *EMC Corp.*, 2012 U.S. Dist.

11  LEXIS 132513, at *3 (quoting 14D Charles Alan Wright, Arthur Miller & Mary Kay Kane, Fed.

12  Prac. & Proc. § 3823 (3d ed. 2011)).

13       In applying the first-to-file rule, "a court looks at three threshold factors: (1) the chronology

14  of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z-Line*

15  *Designs, Inc.*, 218 F.R.D. at 665 (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625-

16  26 (9th Cir. 1991); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). The

17  chronology of the two actions factor is satisfied where "one action [was] filed prior to the other."

18  *EMC Corp.*, 2012 U.S. Dist. LEXIS 132513, at *4. The similarity of the parties factor is satisfied

19  where the parties are substantially similar. *See Microchip Tech., Inc. v. United Module Corp.*, 2011

20  U.S. Dist. LEXIS 73276, at *11 (N.D. Cal. July 7, 2011). The similarity of the issues factor is

21  satisfied where "both actions involve similar issues." *Hill v. Robert's Am. Gourmet Food, LLC*, 2013

22  U.S. Dist. LEXIS 96435, at *9-10 (N.D. Cal. July 10, 2013). "Again, courts have held that the

23  issues in the two actions must be *substantially similar*, rather than identical." *Id.* (citations omitted,

24  emphasis in the original); *see also Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F.

25

_____

26  [4] At a minimum, Wi-LAN respectfully requests that the Court stay this case pending resolution of
the mirror-image action Wi-LAN filed two business days after Apple commenced this preemptive

27  declaratory action.

28

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

McKool Smith Hennigan, P.C.
Redwood Shores, California

1   Supp. 2d 949, 959 (N.D. Cal. 2008) ("[T]he first-to-file rule is satisfied by a sufficient similarity of

2   issues.").

3       Here, the S.D. Cal. Action, which has been pending for more than 12 months, counts as first-

4   filed.  First, the S.D. Cal. Action commenced long before this action began.  Second, the S.D. Cal.

5   Action involves the same parties.  Third, the S.D. Cal. Action involves substantially similar issues to

6   this case—the same products, related patents and technology, many common inventors including

7   Mr. Stanwood, and many similar fact and legal issues relating to claim construction, patent

8   infringement and validity.  Even though it misleadingly failed to identify the S.D. Cal. Action as a

9   related action in the civil cover sheet, Apple admitted that the two actions are related in the

10  Amended Complaint.  *See* Am. Compl. ¶ 15.  Moreover, the Clerk of the Southern District of

11  California court has already found that the new Wi-LAN Complaint and the S.D. Cal. Action:  (1)

12  "*involve the same patent . . . or different patents . . . covering substantially identical things*"; and

13  (2) having two separate judges hear the two actions "*would entail unnecessary duplication of*

14  *labor*."  Schubert Decl. Ex. 5 (emphasis added).  Apple has not contested those findings of fact.

15      Wi-LAN thus respectfully requests that the Court order transfer pursuant to the first-to-file

16  rule.

17              **2.      The Principles of Judicial Efficiency and Economy Compel Transfer.**

18      Even if the Court were to find that the S.D. Cal. Action is not first-filed, Wi-LAN

19  respectfully submits that an order transferring this case to Judge Sabraw would still be warranted.

20  Such an order would be fully consistent with the twin goals of the first-to-file rule, *i.e.*, to "promote[]

21  judicial efficiency and prevent[] the risk of inconsistent decisions that would arise from multiple

22  litigations."  *Interactive Fitness Holdings, LLC v. ICON Health & Fitness, Inc.*, 2011 U.S. Dist.

23  LEXIS 39636, at *5 (N.D. Cal. Apr. 5, 2011).

24      Over the past year, Judge Sabraw has invested significant time and effort evaluating Wi-

25  LAN's 4G technology, and four of the five Wi-LAN patents at issue in this action are related to one

26  of the patents presently being litigated by Apple and Wi-LAN before Judge Sabraw.  Further, Judge

27  Sabraw issued a *Markman* Order construing a number of claim terms that also appear in the patents

28                                                      - 13 -

at issue in this action.  Judge Sabraw granted Wi-LAN's motion to clarify certain aspects of his *Markman* Order.  Judge Sabraw overruled Apple's strenuous and repeated objections to the clarified *Markman* Order.  And, over the next few months, Judge Sabraw will be presiding over pre-trial matters, summary judgment motions, *Daubert* motions, and trial.  Schubert Decl. Ex. 1.  It simply makes no sense for this Court to duplicate efforts Judge Sabraw has already expended.  Notably, the mirror-image complaint Wi-LAN filed just two business days after Apple filed this anticipatory action was assigned to Judge Sabraw as a "related action," and the Clerk of the S.D. Cal. court found that having the new complaint assigned to another judge "***would entail unnecessary duplication of labor.***"  Schubert Decl. Ex. 5 (emphasis added).  This further underscores that significant efficiencies are to be realized from having Judge Sabraw preside over Apple's declaratory claims now pending before this Court.

Apple's decision to "jump the gun" and commence a preemptive action against Wi-LAN in this Court cannot override the principles of judicial efficiency and economy.  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (noting that "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice.").  There is simply no justification for blessing the inefficiency Apple demands and condoning Apple's forum shopping.

The Court should also not allow Apple to walk away from a forum it previously hailed as ideal for resolving the parties' dispute.  Especially in the context of actions arising under the Declaratory Judgment Act, the Ninth Circuit has directed district courts to "avoid duplicative litigation" and "discourage litigants from filing declaratory actions as a means of forum shopping." *Bitter v. Windsor Sec., LLC*, 2014 U.S. Dist. LEXIS 52056, at *10-11 (N.D. Cal. Apr. 11, 2014) (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).  Allowing Apple to renege on its sworn representations that the Southern District of California is the right court to hear the parties' dispute—and indeed, as Apple put it, "***the only forum***" that is able to secure crucial trial testimony (Schubert Decl. Ex. 2 at 9)—is sharply inconsistent with Ninth Circuit precedent.

McKool Smith Hennigan, P.C.
Redwood shores, California

- 14 -

McKool Smith Hennigan, P.C.
Redwood Shores, California

### 3.    Transfer Is Warranted Pursuant to 28 U.S.C. §1404.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *MTS Sys. Corp. v. Hy-Sitron, Inc.*, 2006 U.S. Dist. LEXIS 66338, at *5 (N.D. Cal. Sept. 1, 2006) (quoting 28 U.S.C. § 1404(a)). In addition to the three factors identified in § 1404(a), the Ninth Circuit provides other factors a court may consider, among them, the ease of access to the evidence and the availability of compulsory process to compel attendance of unwilling non-party witnesses. *TransPerfect Global, Inc. v. MotionPoint Corp.*, 2010 U.S. Dist. LEXIS 99947, at *4 (N.D. Cal. Sept. 13, 2010) (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

The representations Apple made last year to the U.S. District Court for the Southern District of Florida, which compelled that court to transfer the Florida Action to Judge Sabraw, leave no doubt that this dispute too belongs in Judge Sabraw's courtroom.

**The Convenience of the Parties Favors Transfer.**  When it sought to transfer the Florida Action, Apple portrayed the Southern District of California as a "convenient forum," in which Apple witnesses could participate with "ease."  Schubert Decl. Ex. 2 at 7.   For Wi-LAN witnesses, the Southern District of California is more convenient than this Court.  In particular, Mr. Stanwood and several other inventors of the Wi-LAN Patents reside in the San Diego area.  *Id.* at 8.

**The Relative Ease of Access of Sources of Proof Favors Transfer.**  When it sought to transfer the Florida Action, Apple portrayed the Southern District of California as a location from which Apple evidence would be easily accessible.  Schubert Decl. Ex. 7.   Critically, Apple also represented that evidence Apple would need to obtain from a third-party source—Qualcomm—was of utmost importance to establish Apple's non-infringement defenses.  In particular, Apple told the Florida court that:

- Transfer to the Southern District of California was warranted because "Wi-LAN's claims [were] directed to technology developed by third party Qualcomm Incorporated ('Qualcomm'), who is located in SD Cal";

- 15 -

- "Apple purchases technology from Qualcomm that implements the LTE industry communication standard at issue, so Qualcomm will be the source for the majority of the evidence in this case";

- "Wi-LAN's infringement allegations focus on technology of third party supplier Qualcomm, an SD Cal resident and Apple's sole supplier of the LTE technology at issue in this case";

- "As a downstream customer of the LTE chips at issue, Apple's knowledge of the design, manufacture, and operation of these devices is significantly limited.  Thus, Apple will have to rely on chip supplier Qualcomm to provide support for establishing its non-infringement defense.  Because Qualcomm resides in SD Cal, the transferee forum can compel Qualcomm witnesses to appear at trial."

Schubert Decl. Ex. 2 at 1-2.

Apple also noted that numerous inventors of the "patents-in-suit reside or recently resided in SD Cal, and the patent prosecution attorney for the patents-in-suit also works and resides in SD Cal." *Id.* at 8.  Apple concluded that "[b]ecause the majority of relevant documents and evidence are located closer to SD Cal, this factor weighs strongly in favor of transfer."  *Id.*

**The Convenience of the Witnesses Favors Transfer.**  When it sought to transfer the Florida Action, Apple relied heavily on Qualcomm's presence in San Diego.  Apple argued that "[a]s the supplier of the accused technology, Qualcomm's witnesses, which are located in SD Cal, are likely to have some of the most material testimony in this case."  Schubert Decl. Ex. 2 at 8.  Indeed, Apple represented to the Florida court that "*the center of gravity of the accused activity is located in SD Cal, where the research, design, marketing, and sales decisions related to the accused products and technology occurred*."  *Id.* at 9 (emphasis added).

**The Availability of Compulsory Process Favors Transfer.**  When it sought to transfer the Florida Action, Apple touted the Southern District of California Court's "ability to subpoena critical non-party witnesses for deposition or trial."  Schubert Decl. Ex. 2 at 9.  Apple also represented that "Qualcomm will likely supply the primary technical witnesses that will testify at trial" and argued

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA

DEFENDANT WI-LAN INC.'S
MOTION TO SEVER, TRANSFER, AND DISMISS
Case No. 4:14-CV-02838-CW

McKool Smith Hennigan, P.C.
Redwood Shores, California

1  that transfer was appropriate because "SD Cal enjoys absolute subpoena power over Qualcomm,

2  which includes the ability to hale its relevant witnesses into court." *Id.*  In fact, Apple represented

3  that "SD Cal is ***the only forum able to compel technical witnesses from Qualcomm for trial***, [and

4  thus,] this factor favors strongly in favor of transfer." *Id.* at 9 (emphasis added).

5       In sum, for the very same reasons touted in Apple's motion to transfer the Florida Action, the

6  Southern District of California court remains uniquely suited to resolve this dispute.  Transfer is

7  particularly appropriate given the Federal Circuit's recent pronouncement that "judicial economy

8  should play a role in transfer matters," and that "[d]eference as to the proper administration of justice

9  is particularly appropriate . . . where the trial court is familiar with [an] . . . asserted patent and the

10 related technology." *In re Microsoft Corp.*, No. 2014-123, slip op. at 3 (Fed. Cir. May 5, 2014).

11      **C.      Count XV Should Be Dismissed.**

12      In Count XV of the Amended Complaint, Apple seeks a declaration of unenforceability

13 against all patents-in-suit.  Apple alleges that this request is based on Wi-LAN's purported "pattern

14 and practice of improper activity to acquire, license, and assert its patents in bad faith."  Am. Compl.

15 ¶ 84.  Count XV is fatally deficient and should be dismissed.

16      Claims predicated upon allegations of wrongful enforcement are strongly disfavored.  In fact,

17 the Patent Act provides that "[n]o patent owner otherwise entitled to relief for infringement or

18 contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal

19 extension of the patent right by reason of his having . . . sought to enforce his patent rights against

20 infringement or contributory infringement."  35 U.S.C. § 271(d)(3).  To overcome this strong

21 presumptive statutory bar, an accused infringer must adequately plead that the patentee's patent

22 infringement claims were filed in bad faith *and* with an improper purpose.  *See Reid-Ashman Mfg.*,

23 2007 U.S. Dist. LEXIS 37665, at *23 (citing *Glaverbel Societe Anonyme*, 45 F.3d at 1558).

24      The Amended Complaint's allegations come nowhere close to meeting the requisite pleading

25 standards.  Apple—a company that itself is known for forceful enforcement efforts[5]—fails to allege

---

[5] *See, e.g.*, Schubert Decl. Ex. 3 (noting that, as of 2012, Apple and Samsung were engaged in ***more than 50*** litigations around the world).

- 17 -

McKool Smith Hennigan, P.C.
Redwood Shores, California

1   that Wi-LAN does not have a good faith basis for asserting that Apple is infringing the Wi-LAN

2   Patents. Apple has also failed to allege that Wi-LAN is asserting its rights under the Wi-LAN

3   Patents with any type of improper purpose.  Apple's allegations that in two other cases Apple

4   obtained declarations of non-infringement and invalidity (*see* Am. Compl. ¶ 85) cannot resurrect

5   Apple's deficient wrongful enforcement claim.  As Apple acknowledges, those cases involved Wi-

6   LAN patents that are not at issue here, and Wi-LAN is aware of no authorities that would permit a

7   court to hold unenforceable a particular set of patents based on unsuccessful enforcement activities

8   that do not concern those patents.  Furthermore, none of the courts in which Apple and Wi-LAN

9   previously litigated their disputes—or, indeed, not a single court in which Wi-LAN has sought to

10  enforce its patents—have found Wi-LAN's enforcement efforts to have been brought in bad faith or

11  motivated by an improper purpose.  And Wi-LAN's huge number of licensees, which includes

12  virtually all of Apple's major competitors, leaves no doubt that Wi-LAN's fundamental patents are

13  worthy of respect and that Wi-LAN is not in the business of asserting patents without justification.

14      As such, Apple's wrongful enforcement theory is squarely foreclosed by 35 U.S.C. §

15  271(d)(3).

16  **IV.    CONCLUSION**

17      For the foregoing reasons, Wi-LAN respectfully requests that the Court should enter an

18  order:   (1) severing Apple's claims against Wi-LAN from Apple's claims against ONS; (2)

19  transferring Apple's claims against Wi-LAN to the Southern District of California; and (3)

20  dismissing Count XV of the Amended Complaint.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKool Smith Hennigan, P.C.
Redwood Shores, California

Dated:  July 28, 2014

Respectfully submitted,

By:

   /s/ *Robert Cote*

Robert Cote

Courtland L. Reichman (SBN 268873)
McKool Smith Hennigan, P.C.
255 Shoreline Drive Suite 510
Redwood Shores, CA 94065
Tel: (650) 394-1400
Fax: (650) 394-1422

McKool Smith, P.C.
Robert A. Cote (admission *pro hac vice*)
rcote@mckoolsmith.com
Kevin Schubert
kschubert@mckoolsmith.com
One Bryant Park, 47th Floor
New York, NY 10036
Tel: (212) 402-9400
Fax: (212) 402-9444

McKool Smith, P.C.
Dirk D. Thomas (admission *pro hac vice*
pending)
dthomas@mckoolsmith.com
1999 K Street, NW
Washington, DC 20006
Tel: (202) 370-8202
Fax: (202) 370-8344

*Attorneys for Defendant Wi-LAN Inc.*

- 19 -

1

### CERTIFICATE OF SERVICE

2  The undersigned certifies that counsel of record who are deemed to have consented to

3  electronic service are being served on July 28, 2014, with a copy of this document via the Court's

4  CM/ECF system per Local Rules.  Any other counsel will be served by electronic mail, facsimile,

5  overnight delivery and/or first class mail on this date.

6

7  _____ */s/ Robert Cote* _____
Robert Cote

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CALIFORNIA